1

**Honorable John C. Coughenour**

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

MARK GERMACK DDS, individually and
on behalf of all others similarly situated,

9

No.  2:20-cv-00661-JCC

10

Plaintiffs,

**MOTION TO STRIKE AND DISMISS
ALL CLASS ACTION ALLEGATIONS
IN PLAINTIFF'S COMPLAINT**

11

vs.

12

THE DENTISTS INSURANCE COMPANY,

**Noted on Motion Calendar:
June 26, 2020**

13

Defendants

**Oral Argument Requested**

14

15

Defendant The Dentists Insurance Company (TDIC) submits the following Motion to

16

Strike and Dismiss All Class Action Claims in Plaintiff's Complaint.

17

I.      INTRODUCTION

18

This is one of now hundreds of purported class action lawsuits being filed throughout the

19

nation seeking class treatment for business interruption claims associated with the COVID-19

20

pandemic.  Plaintiff Mark Germack, DDS alleges that this case is susceptible of national and

21

state class treatment on the issue of whether coverage exists for business interruption caused by

22

the COVID-19 pandemic and the amount of damages that each purported class member may be

23

entitled to recover against TDIC.

MOTION TO STRIKE AND DISMISS ALL CLASS ACTION
ALLEGATIONS IN PLAINTIFF'S COMPLAINT – 1

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

Plaintiff alleges that TDIC wrongfully denied coverage under the Businessowners Property Coverage Part in his TDIC Policy, which provides the following relevant coverages:

- Business Income
- Extra Expense
- Extended Business Income
- Civil Authority[1]

Plaintiff alleges that he is entitled to declaratory judgment finding coverage for himself and all purported class members.  He further alleges a cause of action for breach of contract and seeks money damages on behalf of himself and all purported class members.

Because these are highly individualized inquiries that will depend on the individual facts of each insured's coverage situation and lost business income, this case is wholly unsuitable for class treatment.  Moreover, in light of the differing manner in which various states and municipalities have limited the practice of dentistry and the differing legal standards for the construction of insurance policies in each jurisdiction that may be implicated by a national class action, this case is not legally suitable for class treatment.

Based on the allegations of the Complaint, Plaintiff cannot meet his burden of commonality or typicality as required by FRCP 23(a).  Moreover, although Plaintiff's Complaint (Dkt. at 1) purports to be seeking class certification under each sub-paragraph of Rule 23(b) – FRCP 23(b)(1), (2), and (3) – the Complaint does not allege facts that make this matter suitable for class treatment.  The Complaint simply does not allege facts that would make class treatment appropriate under Rule 23(b)(1).  Class treatment under Rule 23(b)(2) is inappropriate as the Complaint seeks primarily money damages.  Finally, Plaintiff simply cannot meet his burden of demonstrating predominance and superiority under Rule 23(b)(3).

---

[1] Where appropriate, these coverages will be referred to collectively as, "Business Interruption" coverage.

**MOTION TO STRIKE AND DISMISS ALL CLASS ACTION ALLEGATIONS IN PLAINTIFF'S COMPLAINT** – 2

As a result, TDIC asks that the Court strike and dismiss all of the Class Allegations –
including those in the Plaintiff's Prayer for Relief – from Plaintiff's Complaint such that this
matter may proceed on Dr. Germack's individual claims on their merits.

## II.     ALLEGATIONS IN PLAINTIFF'S COMPLAINT

Plaintiff alleges that "[d]ue to COVID-19 and state-ordered mandated closure," he is
unable to provide dental services.  Dkt. 1, p. 2.  Plaintiff further alleges that he intended to rely
on his "business insurance" to keep his business operational during the COVID-19 crisis.  *Id.*

Plaintiff's Complaint then contains several general allegations indicating that TDIC
issued a Businessowners Property Coverage to the Plaintiff that contains the various Business
Interruption coverages.  Dkt. 1, pp. 2-3.

Plaintiff then claims that in January of 2020, the United States saw its first cases of
persons infected by COVID-19, ultimately prompting Washington State Governor Jay Inslee to
issue a "Stay Home, Stay Safe" Order.  Dkt. 1, p. 3.  The Complaint alleges that the "Stay Home,
Stay Safe" Order required the closure of all non-essential businesses, "including Plaintiff's
business." *Id.*

Despite that allegation, Plaintiff's Complaint then goes on to allege the following:

14.    By order of Governor Inslee, dentists including Plaintiff
were prohibited from practicing dental services **but for
urgent and emergency procedures**.

15.    Governor Inslee's "PROCLAMATION BY THE
GOVERNOR AMENDING PROCLAMATION 20-05: 20-
24 Restrictions on Non Urgent Medical Procedures," dated
March 19, 2020, also provides, in part:

WHEREAS, the health care person protective
equipment supply chain in Washington State has
been severely disrupted by the significant increased
use of such equipment worldwide, such that there are
now critical shortages of this equipment for health

**MOTION TO STRIKE AND DISMISS ALL CLASS ACTION
ALLEGATIONS IN PLAINTIFF'S COMPLAINT** – 3

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

care workers. To curtail the spread of the COVID-19 pandemic in Washington State and to protect our health care workers as they provide health care services, it is necessary to immediately prohibit all hospitals, ambulatory surgery centers, and dental orthodontic, and endodontic offices in Washington State from providing health care services, procedures and surgeries that require personal protective equipment, which if delayed, are not anticipated to cause harm to the patient within the next three months.

Dkt. 1, pp. 3-4 (emphasis added).

Plaintiff admits that no COVID-19 virus has been detected on the insured premises. Dkt. 1, p. 4.

Plaintiff's Complaint then alleges that his property has suffered "direct physical loss or damage" that is covered under the Business Interruption coverages and that TDIC has denied his claim for benefits under those coverages. Dkt. 1, pp. 4-5. Plaintiff then goes on to define the class that he is seeking to represent as follows:

25. The Classes and Subclasses that Plaintiff seeks to represent are defined as:

A. ***Business Income Coverage Breach of Contract Class:*** All persons and entities in the United States insured under a TDIC policy with Business Income Coverage who suffered a suspension of their business at the covered premises related to COVID-19 and/or orders issued by Governor Inslee, other Governors, and/or other civil authorities and whose Business Income claim has been denied by TDIC.

B. ***Business Income Coverage Breach of Contract Washington Subclass:*** All persons and entities in the State of Washington insured under a TDIC policy with Business Income Coverage who suffered a suspension of their business at the covered premises related to COVID-19 and/or orders issued by Governor Inslee, and/or other civil authorities and

MOTION TO STRIKE AND DISMISS ALL CLASS ACTION
ALLEGATIONS IN PLAINTIFF'S COMPLAINT – 4

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

whose Business Income claim has been denied by TDIC.

C.   ***Business Income Coverage Declaratory Relief Class:*** All persons and entities in the United States insured under a TDIC policy with Business Income Coverage who suffered a suspension of their business at the covered premises related to COVID-19 and/or orders issued by Governor Inslee, other Governors, and/or other civil authorities.

D.   ***Business Income Coverage Declaratory Relief Washington Subclass:*** All persons and entities in the State of Washington insured under a TDIC policy with Business Income Coverage who suffered a suspension of their business at the covered premises related to COVID-19 and/or orders issued by Governor Inslee, and/or other civil authorities.

Dkt. 1, p. 5.

Plaintiff goes on in sub-paragraphs E.-P. to identify additional national and state classes and sub-classes for Declaratory Relief and Breach of Contract under the Extra Expense, Extended Business Income, and Civil Authority coverages.  *Id.* at pp. 5-8.

Plaintiff then includes a list of what are self-servingly described as common issues supporting commonality and predominance as well as several other conclusory statements and legal conclusions relating to the applicability of the various Rule 23 factors for class treatment. Dkt. 1, pp. 8-11.

Finally, at page twelve (12) of Plaintiff's Complaint, Plaintiff asserts a cause of action brought on behalf of all purported classes and subclasses seeking Declaratory Judgment under 28 U.S.C. §2201.  Dkt. 1, p. 12.  Supporting this claim, Plaintiff purports to seek the following:

38.   Plaintiff seeks a declaratory judgment declaring that Plaintiff's and class members losses and expenses resulting from the interruption of their business are covered by the Policy.

MOTION TO STRIKE AND DISMISS ALL CLASS ACTION
ALLEGATIONS IN PLAINTIFF'S COMPLAINT – 5

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1

2

     39.     Plaintiff seeks a declaratory judgment declaring that TDIC
is responsible for timely and fully paying all such claims.

*Id.*

3

4

     Plaintiff then asserts – on behalf of all classes and subclasses – a cause of action for

5

Breach of Contract.  Dkt. 1, pp. 12-13.  Plaintiff's allegations regarding breach of contract are

6

summarized in the last two paragraphs of that section.

7

     45.     Denying coverage for the claim is a breach of the insurance
contract.

8

     46.     Plaintiff is harmed by the breach of the insurance contract by
TDIC.

9

*Id.*

10

     Plaintiff then states his Prayer for Relief, including a judicial declaration of coverage for

11

all losses and expenses resulting from the interruption of Plaintiff's business due to COVID-19

12

and/or orders issues by Governor Inslee or other authorities.  Dkt. 1, p. 13.  The Prayer for Relief

13

also seeks the following:

14

     2.     A declaratory judgment that the defendant is responsible for
timely and fully paying all such losses.

15

16

     3.     Damages.

17

*Id.*

18

     Based on a plain reading of Plaintiff's Complaint, Plaintiff is asking this Court to take

19

jurisdiction over every insurance claim submitted to TDIC for Business Interruption coverage

20

caused by the COVID-19 outbreak for which TDIC has denied coverage for any reason.  Plaintiff

21

is then asking this Court to enter a blanket ruling that coverage should have been extended to

22

each and every claim regardless of the law of the jurisdiction where each claim originated.

23

Plaintiff is then asking this Court to award monetary damages to each insured, without any regard

**MOTION TO STRIKE AND DISMISS ALL CLASS ACTION
ALLEGATIONS IN PLAINTIFF'S COMPLAINT** – 6

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

for how the Court could possibly make such an award without individually evaluating the financial records of each insured.

Based on this Complaint, Plaintiff's class allegations should be stricken.

## III.   LEGAL ANALYSIS

### A.   Legal Standard for Consideration of a Motion to Dismiss or Strike Class Allegations Based on the Pleadings

The Federal Rules of Civil Procedure expressly contemplate motions to dismiss or strike class allegations under Rule 23(d)(1)(D).  To survive this type of motion, a plaintiff must plead facts sufficient to demonstrate that all the prerequisites of Rule 23(a) are met, as well as facts showing a class action is maintainable under Rule 23(b).  *See*, *e.g.*, *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  Moreover, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Rule 23(b)(3).  When a complaint fails to plead the minimum facts necessary to satisfy all these Rule 23 prerequisites, then courts readily dismiss or strike the class action allegations.  *See Grundmeyer v. Allstate Prop. & Cas. Ins. Co.*, 2015 U.S. Dist. LEXIS 180693, *1 (W.D. Wash. Sept. 29, 2015).

In *Grundmeyer*, the Honorable Robert Lasnik detailed the Court's legal standard for considering class allegations on the pleadings as follows:

> Because "Rule 23 does not set forth a mere pleading standard" (Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011)), the Court presumes that defendant is challenging the adequacy of the pleadings under Fed. R. Civ. P. 12 rather than putting the class certification issue before the Court under Fed. R. Civ. P. 23. See Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 941 (9th Cir. 2009). The question, therefore, is whether the allegations in the First Amended Complaint state "plausible" grounds for class certification or whether they are so

MOTION TO STRIKE AND DISMISS ALL CLASS ACTION
ALLEGATIONS IN PLAINTIFF'S COMPLAINT – 7

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

conclusory or formulaic that they should be disregarded. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). All well-pleaded allegations are presumed to be true, with all reasonable inferences drawn in favor of plaintiff. In re Fitness Holdings Int'l, Inc., 714 F.3d 1141, 1144-45 (9th Cir. 2013). If the class allegations are legally or factually defective, however, dismissal is appropriate. <u>Shroyer v. New Cingular Wireless Servs.</u>, 622 F.3d 1035, 1041 (9th Cir. 2010).

*Grundmeyer*, 2015 U.S. Dist. LEXIS 180693, *3.

As the Supreme Court has noted, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiffs claim." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982).

The 9th Circuit Court of Appeals decisions on striking class allegations are in accord:

> Although in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations. Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion.

*Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985).

Plaintiff may take the position that the Court should not rule on this motion due to the fact that this action is related to a matter filed with the Panel for Multi-District Litigation and there is a motion to transfer and consolidate pending.  However, while that motion is pending, this Court retains jurisdiction and should not delay the case due to the MDL Panel.

> During the pendency of a motion (or show cause order) for transfer, however, the court in which the action was filed retains jurisdiction over the case.
>
> The transferor court should not… automatically postpone rulings on pending motions, or generally suspend further proceedings. When notified of the filing of a motion for transfer, therefore, matters such as motions to dismiss or to remand, raising issues unique to the particular case, may be particularly appropriate for resolution before the Panel acts on the motion to transfer.

**MOTION TO STRIKE AND DISMISS ALL CLASS ACTION ALLEGATIONS IN PLAINTIFF'S COMPLAINT** – 8

Manual for Complex Litigation (Fourth) § 20.131; *See also, Allen v. Bayer Corp. (In re : Phenylpropanolamine (PPA) Prods. Liab. Litig.)*, 460 F.3d 1217 (2006).

**B.**   **Plaintiff's Class Allegations Fail on the Pleadings**

> The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano* v. *Yamasaki*, 442 U.S. 682, 700-701, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979). In order to justify a departure from that rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Tex. Motor Freight System, Inc.* v. *Rodriguez*, 431 U.S. 395, 403, 97 S. Ct. 1891, 52 L. Ed. 2d 453 (1977) (quoting *Schlesinger* v. *Reservists Comm. to Stop the War*, 418 U.S. 208, 216, 94 S. Ct. 2925, 41 L. Ed. 2d 706 (1974)). Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements--numerosity, commonality, typicality, and adequate representation--"effectively 'limit the class claims to those fairly encompassed by the named plaintiff 's claims.'

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-349, 131 S. Ct. 2541, 2550, 180 L. Ed. 2d 374, 388-389, 2011 U.S. LEXIS 4567, *16-18, 79 U.S.L.W. 4527, 112 Fair Empl. Prac. Cas. (BNA) 769, 161 Lab. Cas. (CCH) P35,919, 94 Empl. Prac. Dec. (CCH) P44, 193, 79 Fed. R. Serv. 3d (Callaghan) 1460, 22 Fla. L. Weekly Fed. S 1167.

Class certification is appropriate only where the named Plaintiff has demonstrated the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a) as well as at least one of the requirements listed in Rule 23(b).  *Grundmeyer*, 2015 U.S. Dist. LEXIS 180693, *3.

As is discussed herein, Plaintiff's class allegations are deficient under both Rule 23(a) and 23(b).

### 1.   *Plaintiff Cannot Establish Commonality or Typicality Under FRCP 23(a).*

Plaintiff generally alleges that common questions predominate over individual issues and then provides a list of nine (9) allegedly common questions. Dkt. 1, pp. 9-10. However, a close review of Plaintiff's questions reveals that those questions do not satisfy the commonality

MOTION TO STRIKE AND DISMISS ALL CLASS ACTION
ALLEGATIONS IN PLAINTIFF'S COMPLAINT – 9

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444 F: (206) 467-5544

requirements of Rule 23(a).  In addressing the commonality requirement, Justice Scalia remarked as follows:

> The crux of this case is commonality--the rule requiring a plaintiff to show that "there are questions of law or fact common to the class." Rule 23(a)(2). That language is easy to misread, since "[a]ny competently crafted class complaint literally raises common 'questions.'"
> . . .
> Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury," *Falcon*, *supra*, at 157, 102 S. Ct. 2364, 72 L. Ed. 2d 740. This does not mean merely that they have all suffered a violation of the same provision of law.
> . . .
> Their claims must depend upon a common contention--for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.
>
> "What matters to class certification . . . is not the raising of common 'questions' -- even in droves -- but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."

*Wal-Mart Stores, Inc.*, 564 U.S. at 350 (*quoting*, ARTICLE: CLASS CERTIFICATION IN THE AGE OF AGGREGATE PROOF, 84 N.Y.U.L. Rev. 97).

　　As the Supreme Court noted in *Dukes*, any competently pled class action complaint will contain allegations of common questions.  Here, Plaintiff has raised multiple questions that he purports to be common, if not in "droves" then at least as any competently drafted complaint might.  However, the question of commonality is not in common questions, but the ability for those questions to generate common answers.

**MOTION TO STRIKE AND DISMISS ALL CLASS ACTION ALLEGATIONS IN PLAINTIFF'S COMPLAINT** – 10

This is simply not a case where common answers might be identified for the proposed class. The lack of ability to achieve common answers is no more stark than in Plaintiff's common question H., which asks:

> Whether because of Defendant's conduct, Plaintiff and the class members have suffered damages; and if so, the appropriate amount thereof; . . .

Dkt. 1, p. 10.

There is simply no way that the Court can determine the amount of damages that each dentist insured by TDIC suffered as a result of the COVID-19 related partial closures without an individual assessment of the complete financial records of each individual dentist/insured. The factors that the Court would have to consider for each dentist/insured are too numerable to fully describe herein, but would certainly include at least all of the following:

- Each dentist/insured's operational capacity and revenue and overhead projections for March to May 2020.

- Each dentist/insured's historical revenue and overhead for the March to May time period as compared to other months in the calendar year.

- Each dentist/insured's patient roster in March 2020, including the anticipated rate of adding/losing patient base during the March to May 2020 period.

- The amount of revenue that each dentist/insured was able to generate to mitigate their damages through the performance of emergency procedures.

Obviously, there cannot be common answers to the damages question. It is axiomatic that in the practice of dentistry, there will be practitioners with varying levels of revenue and expenses. Some dentist/insureds may be very busy with multiple clinics in multiple locations while other dentist/insureds may operate very modest practices. Some dentists may historically take a sabbatical from their practices during the early springtime, such that they have no damages

**MOTION TO STRIKE AND DISMISS ALL CLASS ACTION
ALLEGATIONS IN PLAINTIFF'S COMPLAINT** – 11

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1  whatsoever related to COVID-19.  These individual issues predominate and cannot support any

2  claim for commonality or typicality under Rule 23(a).

3        The damages question presumes, though, that the Court would even get to that issue.  The

4  first seven purportedly common questions offered by Plaintiff are all essentially the single issue

5  of whether there is coverage available to the dentist/insured class for closures or partial closures

6  due to COVID-19 and the governmental response thereto.  For a variety of reasons, there can be

7  no common answer to this question on a class-wide basis.

8        For instance, under settled Washington law, it is the insured's burden to prove entitlement

9  to coverage in the first instance.  *See*, *e.g.*, *McDonald v. State Farm Fire and Cas. Co.*, 119 Wn.

10  2d 724, 731, 837 P.2d 1000, 1003-04 (1992).  So, for each and every class member's claim,

11  Plaintiff would have to prove that the efficient proximate cause of their loss is covered.

12        By its own terms, the efficient proximate cause rule operates when
   an "insured risk" or covered peril sets into motion a chain of

13   causation which leads to an uncovered loss. If the efficient
   proximate cause of the final loss is a covered peril, then the loss is

14   covered under the policy. In chain of causation cases, the efficient
   proximate cause rule is properly applied after (1) a determination

15   of which single act or event is the efficient proximate cause of the
   loss and (2) a determination that the efficient proximate cause of

16   the loss is a covered peril.

17  *McDonald,* 119 Wn.2d 724 (1992) (internal citations omitted).

18        However, not every state follows the efficient proximate cause rule.  Some states will

19  assess coverage under a concurrent cause rule.  *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 258-

20  259 (2002); *Wallach v. Rosenberg,* 527 So. 2d 1386, 1388 (Fl. Ct. App. 1988).

21        Moreover, in some jurisdictions, but not all jurisdictions, the Courts apply an overriding

22  doctrine of reasonable expectations, which "supplements, but does not replace, traditional

23  principles of policy interpretation."  *Coleman-Domanoski v. St. Paul Guardian Ins. Co.*, 2020

**MOTION TO STRIKE AND DISMISS ALL CLASS ACTION
ALLEGATIONS IN PLAINTIFF'S COMPLAINT** – 12

U.S. Dist. LEXIS 73027 (D.Colo.); *see also, W. Heritage Ins. Co. v. Coffman Welding & Metal Work*, 2020 Ky. App. Unpub. LEXIS 256; *Montrose Chemical Corp. of California v. Superior Court*, 9 Cal. 5th 215 (2020).

Moreover, even though a majority of the states have adopted what each state calls an "efficient proximate cause" doctrine, there are innumerable nuances in how each state applies its chosen causation rule based on the development of each state's case law over the years. *Compare Cornhusker Cas. Co. v. Farmers Mut. Ins. Co.*, 268 Neb. 168, 177, 680 N.W.2d 595 (2004) ("[T]he efficient proximate cause rule allows recovery for a loss 'caused by a combination of a covered and an excluded risk only if the covered risk was the efficient proximate cause of the loss, meaning that the covered risk set the other causes in motion which, in an unbroken sequence, produced the result for which recovery is sought.'") *with W. Nat'l Mut. Ins. Co. v. Univ. of N.D.*, 643 N.W.2d 4, 14-15 and 18 (N.D. 2002) (approving the following jury instruction: "The efficient proximate cause is a peril or risk that sets other causes in motion. It is not necessarily the last act in a chain of events, nor necessarily is it the triggering cause. To determine the efficient proximate cause you must look to the quality of the links and the chain of causation. The efficient proximate cause is considered the predominating cause of the loss. By definition there can only be one efficient proximate cause; i.e., predominant cause of the loss.") *and Simonetti v. Selective Ins. Co.,* 859 A.2d 694, 700 (N.J. Super. Ct. App. 2004) ("And with regard to sequential causes of loss, our courts have determined that an insured deserves coverage where the included cause of loss is either the first or last step in the chain of causation which leads to the loss," relying in part on 5 Appleman, *Insurance Law & Practice,* § 3083 at 309-11 (1970)); *see also Russell v. NGM Ins. Co.,* 170 N.H. 424, 438-439, 176 A.3d 196 (2017) ("The efficient proximate cause is the risk that sets others in motion…Under the efficient proximate cause

**MOTION TO STRIKE AND DISMISS ALL CLASS ACTION
ALLEGATIONS IN PLAINTIFF'S COMPLAINT** – 13

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

doctrine, there is *no coverage* for an insured's loss when the efficient proximate cause of that loss is an excluded peril.").

Additionally, each state has its own unique set of statutes, public policy considerations and insurance coverage philosophies. *See, e.g.,* Or. Rev. St. 742.016 (limiting evidence allowed to construe insurance policy); Rev. Code Wash. 48.01.030 (expressing public policy interests in regard to insurance).

These different laws, standards and tests will necessarily require different discovery, evidence and arguments, and will likely yield different results. Based on the numerous legal standards that the Plaintiff is inviting this Court to apply to the facts of each individual dentist/insured's situation, the commonality and typicality elements of Rule 23(a) are impossible for the Plaintiff to establish in this matter.

Moreover, setting aside the legal doctrines associated with policy construction and interpretation, the Court will also need to address the specific coverage issues relating to Business Interruption coverage from each jurisdiction.  In Washington, Business Interruption coverage will be controlled by *Keetch v. Mut. of Enumclaw Ins. Co*., 66 Wn. App. 208, 831 P.2d 784 (1992).  In *Keetch*, the Court of Appeals of the State of Washington held that the "necessary suspension of operations" required by the policy mandates a complete suspension of operations rather than a mere limitation on operations.

> Mutual cites substantial authority in support of its position. *Ramada Inn Ramogreen, Inc. v. Travelers Indem. Co. of Am.*, 835 F.2d 812 (11th Cir. 1988) (decrease in hotel's room occupancy due to restaurant fire was not covered under business interruption policy); *National Children's Expositions Corp. v. Anchor Ins. Co.*, 279 F.2d 428, 83 A.L.R.2d 879 (2d Cir. 1960) (unprecedented snowstorm reduced attendance at exposition; no partial business interruption loss within terms of policy); *Pacific Coast Eng'g Co. v. St. Paul Fire & Marine Ins. Co.*, 9 Cal. App. 3d 270, 88 Cal. Rptr. 122 (1970) (barge in process of being manufactured destroyed by explosion;

MOTION TO STRIKE AND DISMISS ALL CLASS ACTION
ALLEGATIONS IN PLAINTIFF'S COMPLAINT – 14

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

coverage granted for only 2-day period plant closed); *Hotel Properties, Ltd. v. Heritage Ins. Co. of Am.*, 456 So. 2d 1249 (Fla. Dist. Ct. App. 1984) (hotel claimed occupancy of rooms decreased by closing of restaurant due to fire; no coverage provided because no actual suspension [***6] of hotel's business), *review denied*, 464 So. 2d 555 (Fla. 1985); *Rothenberg v. Liberty Mut. Ins. Co.*, 115 Ga. App. 26, 153 S.E.2d 447 (1967) (no business interruption coverage for loss of profits due to burglary); *Howard Stores Corp. v. Foremost Ins. Co.*, 82 A.D.2d 398, 441 N.Y.S.2d 674 (1981) (business interruption coverage denied to insured whose store was damaged by water; business was not forced to suspend retail operation), *aff'd*, 56 N.Y.2d 991, 439 N.E.2d 397, 453 N.Y.S.2d 682 (1982).

We find these decisions persuasive.
. . .
We find further support for Mutual's position in paragraph 4 of the endorsement:

> It is a condition of this insurance that if the insured could reduce the loss resulting from the interruption of business:
>
> a. by complete or partial resumption of operation of the property herein described, whether damaged or not . . .
> . . . .
> such reduction shall be taken into account in arriving at the amount of loss hereunder.

By requiring the insured to mitigate the loss and resume operations as soon as practicable, the endorsement implies that a business interruption loss has forced the insured to cease business operations.

*Keetch*, 66 Wn. App. at 212.

As the *Keetch* Court thoroughly described, a number of other states interpret these coverages as requiring a complaint cessation of operations rather than a mere limitation in operations. As Plaintiff's Complaint in this matter makes clear, the COVID-19 pandemic and Governor Inslee's "Stay Safe, Stay Home" Order never required that dentist/insureds in the State of Washington completely cease all operations.

14.     By order of Governor Inslee, dentists including Plaintiff were prohibited from practicing dental services **_but for urgent and emergency procedures_**.

Dkt.1, p. 3.

In order to answer the common questions posed by the Plaintiff in his class allegations, the Court will need to reconcile the coverages, Governor Inslee's Order, and the rule of law established by _Keetch_.   However, not every jurisdiction follows the _Keetch_ rule. _See e.g., American Medical Imaging Corp. v. St. Paul Fire & Marine Ins. Co.,_ 949 F.2d 690, 692-693 (3rd Cir. 1991) (holding that coverage could be triggered for insured in Pennsylvania that continued reduced operations at alternate site during period of restoration); _Studley Box & Lumber Co. v. Nat'l Fire Ins. Co_., 85 N.H. 96, 154 A. 337, 338 (N.H. 1931) (holding that coverage was available for sawmill running partial operations after fire damage to one of its buildings).

In light of these competing standards, coverage for Business Interruption could potentially exist – assuming each insured could meet their burden on the other elements necessary to trigger the Insuring Agreement – in certain states that allow coverage for limited suspensions of operations, while insureds in other states would not be entitled to coverage.   Again, as the United States Supreme Court held in _Dukes_, this issue for purposes of commonality is whether the questions can lead the Court to common answers.   Clearly, the question of whether each insured is entitled to coverage is not susceptible to finding common answers.

The issue is compounded when the Court is forced to also assess the differing manner in which each state has responded to COVID-19.   Attached as **Appendix A** hereto is a 50-State survey indicating TDIC's analysis of how each state has dealt with the practice of dentistry as it relates to COVID-19.   As is apparent from the survey, each state has had its own response.   While many states are following a similar approach to that adopted by Washington, requiring a cessation

of all non-emergent care, there are nuances to each state's orders that make class treatment impossible.  For instance, the applicable "period of restoration" for each state will differ based on when each state issued its stay-at-home orders and when each state will allow for a return to operations.

It is worth noting as well, that certain counties and even cities within multiple states have adopted their own social distancing protocols that affected the practice of dentistry.

By contrast, many states have not issued any orders preventing the practice of dentistry, but have issued "recommendations" concerning compliance with CDC or other regulatory guidelines (HI, MA, ND, SD, SC, WY).  **Appendix A**.  Based on the purported common questions posed, as well as the definitions and sub-definitions of the proposed classes, dentist/insureds in the class who voluntarily limited their practices without any governmental mandate might not be entitled to coverage.  Certainly, the Court would need to reconcile the difference in how each state has treated COVID-19 vis-à-vis the practice of dentistry in order to answer the purported common questions.

Finally, even if Plaintiff could establish that this Court can somehow answer the question of whether Business Interruption coverage exists under the TDIC Policies for all dentist/insureds in every jurisdiction due to COVID-19 and the governmental response thereto—and even if the Court could somehow answer the question of how much each dentist/insured is entitled to recover on a class-wide basis—the inquiry would still not be over.

For each dentist/insured, the Court would also have to determine and address any other coverage defenses that may exist.  In Dr. Germack's case, he never formally submitted a claim to TDIC (he spoke to his broker, but did not submit a claim pre-suit) and then did not respond to TDIC's post-suit request for information. Dkt.  8.   As a result, in Dr. Germack's specific case,

the TDIC cooperation clause is potentially implicated. *Downie v. State Farm Fire & Casualty Company*, 84 Wn. App. 577, 929 P.2d 484 (1997); *Tran v. State Farm Fire and Cas. Co.*, 136 Wn.2d 214, 961 P.2d 358 (1998); *Pilgrim v. State Farm*, 89 Wn. App. 712, 950 P.2d 479 (1997); *Keith v. Allstate Indemnity Co.*, 105 Wn. App. 251, 19 P.3d 443 (2001).

Other insureds may have submitted COVID-19 related Business Interruption claims only to then misrepresent or conceal material facts about their claim, thus resulting in an independent basis for denial. *Mut. of Enumclaw Ins. Co. v. Cox*, 110 Wn.2d 643, 757 P.2d 499 (1988); *Johnson v. Allstate Ins. Co.*, 126 Wn. App. 510, 108 P.3d 1273 (2005). Others may have submitted claims even though their polices were cancelled due to pre-pandemic failure to pay premium. Any number of individualized coverage issues may be implicated and will predominate.

Based on the foregoing, TDIC submits that Plaintiff simply cannot possibly meet his burden of establishing commonality and typicality under Rule 23(a). Because this failure is preclusive of class treatment of the Plaintiff's claims, the Court need not go further. However, even if Plaintiff could somehow meet his burden on Rule 23(a), he would still need to prove that the claims are suitable for class treatment under one of the elements of Rule 23(b). *Grundmeyer*, 2015 U.S. Dist. LEXIS 180693 at *1.

### 2. *Plaintiff Cannot Obtain Class Certification Under Rule 23(b)(1)*

Rule 23(b)(1) certification would be entirely inappropriate in this matter.

> In contrast to class actions brought under subdivision (b)(3), in cases brought under subdivision (b)(1), Rule 23 does not provide for absent class members to receive notice and to exclude themselves from class membership as a matter of right.

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S. Ct. 2295, 144 L. Ed. 2d 715, 1999 U.S. LEXIS 4373, 67 U.S.L.W. 4632, 99 Cal. Daily Op. Service 4953, 99 Daily Journal DAR 6383, 43 Fed. R. Serv. 3d (Callaghan) 691, 1999 Colo. J. C.A.R. 3596, 12 Fla. L. Weekly Fed. S 491

This is not the type of case in which the Court could certify a class under this rule thereby locking all potential class members into the class without the option to opt out.

Rule 26(b)(1) contains two sub-paragraphs, neither of which implicate class certification in this matter.

Rule 23(b)(1)(A) authorizes certification only when separate actions would establish incompatible standards of conduct for the party opposing the class. Finding that class certification under this rule was "untenable" in the context of a suit for money damages following an airplane crash, the Ninth Circuit held as follows:

> Admittedly, separate actions could reach inconsistent results and inconsistent resolutions of the same question of law might establish "incompatible standards of conduct" in the sense of different legal rules governing the same conduct. But subdivision (b)(1)(A) was not intended to permit class actions simply when separate actions would raise the same question of law. To hold otherwise would be to render superfluous the detailed provisions of subdivision (b)(3). Although the two subdivisions do not present mutually exclusive tests, neither does one entirely displace the other. We cannot read subdivision (b)(1)(A) so broadly that subdivision (b)(3) applies only to class actions already maintainable under subdivision (b)(1)(A).
>
> Instead, the "incompatible standards of conduct" of subdivision (b)(1)(A) must be interpreted to be incompatible standards of conduct required of the defendant in fulfilling judgments in separate actions. *See La Mar, supra*, 489 F.2d at 466. In this case, a judgment that defendants were liable to one plaintiff would not require action inconsistent with a judgment that they were not liable to another plaintiff. By paying the first judgment, defendants could act consistently with both judgments. The declaratory relief sought by plaintiffs does not alter this conclusion. They seek only a declaration of liability. They have not specified, and we cannot discern, what obligations such a declaration would impose upon defendants that a judgment for damages would not.

*McDonnell Douglas Corp. v. United States Dist. Court for Cent. Dist.*, 523 F.2d 1083, 1086 (1975).

As is clearly set forth in Plaintiff's Complaint, this matter seeks recovery of money damages, making class treatment under Rule 23(b)(1)(A) entirely inappropriate.

**MOTION TO STRIKE AND DISMISS ALL CLASS ACTION
ALLEGATIONS IN PLAINTIFF'S COMPLAINT** – 19

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

Similarly, there is no basis for class certification under Rule 23(b)(1)(B), which allows for class treatment if separate actions, might as a practical matter be dispositive of the interests of other members not parties to the adjudication or substantially impair or alter their ability to protect their interests. *McDonnell Douglas Corp.* 523 F.2d at 1086, 1975 U.S. App. LEXIS 14531, *3-4. The United States Supreme Court's treatment of sub-paragraph (b)(1)(B) limits its application to certain "classic" limited fund scenarios that appear in the Advisory Committee's comments and warned against any more "adventurous application" of the Rule. *See Ortiz*, 527 U.S. at 833-836 (citing examples such as claimants to trust assets, proceeds of a ship sale, and company assets in liquidation.)

This is not a limited fund case and the refusal to certify a mandatory class will not impair the rights of any non-participant in this action. Dr. Germack's claim for coverage can – and should – be determined on its own merits.

### 3.     *Plaintiff Cannot Obtain Certification Under Rule 23(b)(2)*

The Advisory Committee note to Rule 23(b)(2) states that "the subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." *See also Nelsen v. King County*, 895 F.2d 1248, 1255 (9th Cir. 1990) ("Class certification under Fed. R. Civ. P. 23(b)(2) is not appropriate where the relief requested relates exclusively or predominately to money damages").

The Supreme Court made this principle clear in *Dukes*

> We also conclude that respondents' claims for backpay were improperly certified under Federal Rule of Civil Procedure 23(b)(2). Our opinion in *Ticor Title Ins. Co.* v. *Brown*, 511 U.S. 117, 121, 114 S. Ct. 1359, 128 L. Ed. 2d 33 (1994) *(per curiam)*, expressed serious doubt about whether claims for monetary relief may be certified under that provision. We now hold that they may not, at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief.

*Dukes*, 564 U.S. 338, 360, 131 S. Ct. 2541, 2557, 180 L. Ed. 2d 374, 396.

Although the Plaintiff in the instant action did assert a claim for declaratory relief, that claim is incidental to the individual claims for damages.  In fact, the request for declaratory relief is a request for a finding of insurance coverage, which if granted would result in the payment of insurance proceeds – in other words, money damages.

### 4.      *Plaintiff Cannot Obtain Class Certification Under Rule 23(b)(3)*

Rule 23(b)(3) certification is available only where, "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  FRCP 23(b)(3).  Plaintiff cannot establish the predominance and superiority requirements of Rule 23(b)(3) because individual issues predominate.

In discussing these issues in the context of a proposed class of insurance claimants, the Court in *Grundmeyer* held as follows:

> If the class allegations are legally or factually defective …
> dismissal is appropriate….  Plaintiff has not alleged facts that give
> rise to a plausible inference that the common questions he
> identifies will predominate over individual issues or that a class
> action is superior to other methods of resolving this controversy.
> To the extent there are common issues regarding the nature of the
> perils excluded from coverage and the application of the efficient
> proximate cause rule, their resolution in plaintiff's favor will not
> resolve any class member's claim.  For Allstate to be liable for
> damages, a class member would need to further show (i) that the
> claim was not denied on any other ground (or, if it were, that the
> ground does not bar coverage) and (ii) his or her quantum of
> damages.  These issues are not susceptible to common resolution,
> and plaintiff does not suggest a method for resolving the questions
> that would minimize the need for individual judicial
> determinations.

*Grundmeyer*, 2015 U.S. Dist. LEXIS 180693, *7-8.

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

As detailed above, this case has *even more* individualized issues than in *Grundmeyer,* because the resolution of whether any particular insured is entitled to coverage will be determined by varying legal standards for policy interpretation, based on differing facts and involving individual damages.

Like in *Grundmeyer*, the Western District has consistently refused to certify classes under 23(b)(3) in insurance coverage disputes where individual issues and individual damages predominate.  See, *Franklin v. Gov't Emples. Ins. Co*., 2011 U.S. Dist. LEXIS 125625, 2011 WL 5166458; *Hovenkotter v. Safeco Ins. Co*., 2010 U.S. Dist. LEXIS 112645, 2010 WL 3984828.

> Questions of individual damage calculations will inevitably overwhelm questions common to the class.

*Comcast Corp. v. Behrend*, 569 U.S. 27, 34, 133 S. Ct. 1426, 1433, 185 L. Ed. 2d 515, 522, 2013 U.S. LEXIS 2544, *14, 81 U.S.L.W. 4217, 2013-1 Trade Cas. (CCH) P78,316, 85 Fed. R. Serv. 3d (Callaghan) 118, 24 Fla. L. Weekly Fed. S 125, 57 Comm. Reg. (P & F) 1487, 2013 WL 1222646.

Individual issues predominate and there is not any credible argument that can be made to the contrary.  The determination of whether Dr. Germack is entitled to Business Interruption coverage under Washington law, based on Washington's "Stay Home, Stay Safe" Order is an inherently different inquiry than whether some other dentist/insured might be entitled to coverage under the laws of their jurisdiction, based on the COVID-19 related orders or recommendations of their jurisdiction.

Individual issues will also predominate when considering individual coverage issues that are separate and apart from the mere question of whether the Business Interruption insuring agreements are triggered.  Where there are issues regarding the insured's cooperation or there are misrepresentations or concealment of material facts or where the denial is based on a cancellation of the policy for failure to pay a premium, individual issues will predominate.  Any number of

1   issues ancillary to the actual insuring agreements themselves may be implicated for any particular

2   insured's situation.

3          Plaintiff cannot establish that class treatment of his claims might somehow be superior to

4   other methods of adjudicating this controversy.

5              This is not a case where each class member may be entitled to only
               a few dollars, reducing the likelihood of individual litigation and
6              requiring collective adjudication in order to redress a wrong. Nor is
               it a case in which resolution of the common issues will point to a
7              method for calculating or evaluating damages: the nature and scope
               of the property damage each insured suffered is unknown and would
8              have to be the subject of discovery and individual adjudication. If a
               class were certified, the class members would not long remain
9              "absent." Rather, they would have to participate in order to pursue
               their damages, increasing "the likely difficulties in managing [the]
10             class action."

11  *Grundmeyer*, 2015 U.S. Dist. LEXIS 180693, *8-9.

12         As in *Grundmeyer*, this is not a case in which each class member would be entitled to only

13  a few dollars making individualized litigation of their claims prohibitive. Also, as in *Grundmeyer*,

14  this case suffers from the same management issues pertaining to the individual adjudication of

15  each class member's damages.

16         As a result, there is simply no basis to certify a class action under Rule 23(b)(3) in this

17  matter.

18                          **IV.     CONCLUSION**

19         Based on the foregoing, The Dentists Insurance Company asks that the Court Strike and

20  Dismiss Plaintiff's Class Action Allegations.

21

22

23

**MOTION TO STRIKE AND DISMISS ALL CLASS ACTION**
**ALLEGATIONS IN PLAINTIFF'S COMPLAINT** – 23

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544

1   DATED this May 28th, 2020.

2                                                           LETHER LAW GROUP

3

4                                           _/s/ Eric J. Neal_____

5                                           Eric J. Neal, WSBA #31863
                                            1848 Westlake Avenue N, Suite 100
6                                           Seattle, WA 98109
                                            P: (206) 467-5444/F: (206) 467-5544
7                                           tlether@letherlaw.com
                                            eneal@letherlaw.com
8                                           *Attorneys for Defendant The Dentists Insurance*
                                            *Company*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**MOTION TO STRIKE AND DISMISS ALL CLASS ACTION**
**ALLEGATIONS IN PLAINTIFF'S COMPLAINT** – 24

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies under the penalty of perjury under the laws of the State of Washington that on this date I caused to be served in the manner noted below a true and correct copy of the foregoing on the parties mentioned below as indicated:

KELLER ROHRBACK L.L.P.

Ian S. Birk
Lynn L. Sarko
Gretchen Freeman Cappio
Irene M. Hecht
Maureen Falecki
Amy Williams-Derry
Nathan L. Nanfelt
1201 Third Avenue
Suite 3200
Seattle, WA
ibirk@kellerrohrback.com
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
ihecht@kellerrohrback.com
mfalecki@kellerrohrback.com
awilliams-derry@kellerrrohrback.com
nnanfelt@kellerrrohrback.com

Alison Chase
801 Garden Street
Suite 301
Santa Barbara, CA 93101
achase@kellerrohrback.com

*Attorneys for Plaintiff*

**By:**    ☐ **First Class Mail**      ☒ **ECF/Email**      ☐ **Legal Messenger**

Dated this May 284th, 2020 at Seattle, Washington.

*/s/Alena Rybina*
Alena Rybina | Paralegal

**MOTION TO STRIKE AND DISMISS ALL CLASS ACTION**
**ALLEGATIONS IN PLAINTIFF'S COMPLAINT** – 25

LETHER LAW GROUP
1848 WESTLAKE AVENUE N, SUITE 100
SEATTLE, WA 98109
P: (206) 467-5444  F: (206) 467-5544